UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| URI GEDALIA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-3517 |
| | § | |
| WHOLE FOODS MARKET SERVICES, | § | |
| INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court is Plaintiffs Uri Gedalia ("Gedalia") and Kira Lewis's ("Lewis") (collectively "Plaintiffs") Motion to Certify (Doc. 17) and Defendants Whole Foods Market Services, Inc., *et al.*'s ("Whole Foods") Motion to Dismiss (Doc. 18). Also before the Court is Plaintiffs' response (Doc. 36) and Whole Foods's reply (Doc. 42). Having considered the motion, the response, the reply, the facts in the record and the applicable law, the Court concludes Whole Food's Motion to Dismiss (Doc. 18) should be granted. Plaintiff's Motion to Certify (Doc. 17) is denied as moot.

## I.     Background

Plaintiffs filed this class action suit against Whole Foods individually and on behalf of all persons who have purchased Whole Foods's private-label 365 Organic and 365 Everyday Value (collectively "365 Brands") products that are allegedly falsely labelled as being organic, natural, and/or GMO-free. (Doc. 1). Plaintiffs seek certification as a nationwide class, or, in the alternative, as either state statutory sub-classes, or as Texas and California sub-classes. (*Id*. ¶¶ 137–39). The Complaint asserts violations of California's Organic Products Act ("COPA", CAL. HEALTH & SAFETY CODE §§ 110810-110959), Consumers Legal Remedies Act ("CLRA", CAL.

CIV. CODE § 1750, *et seq.*), False Advertising Law ("FAL", CAL. BUS. & PROF. CODE § 17500, *et seq.*), and Unfair Competition Law ("UCL", CAL. BUS. & PROF. CODE § 17200, *et seq.*). Plaintiffs also allege breaches of express and implied warranties, fraud, unjust enrichment, and negligence and negligent misrepresentation. Plaintiffs Gedalia and Lewis are residents of Houston, Texas and Encino, California, respectively. They claim to have purchased 365 Brands products[1] in reliance on false representations that the products did not contain non-organic, artificial, or genetically modified ("GMO") ingredients. (Orig. Class Action Pet., Doc. 1 ¶¶ 26–35).

In its motion to dismiss (Doc. 18), Whole Foods contends: (1) the complaint violates the Federal Rules of Civil Procedure Rule 8(a); (2) the Plaintiffs lack standing to sue for products they did not personally purchase and for representations that they never alleged they saw; (3) the claims about "organic" and "natural" representations are preempted by federal statutes; (4) the doctrine of primary jurisdiction should be invoked; (5) the Plaintiffs failed to allege plausible, actual, or reasonable reliance on Whole Foods's representations; (6) the complaint violates the Federal Rule of Civil Procedure 9(b); and (7) the warranty and unjust enrichment claims fail as a matter of law.

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual

---

[1] Gedalia claims he purchased "365-brand 'Real Dairy Whipped Topping'" in January 2013 from a Houston, Texas Whole Foods store. In addition, over the past two years Gedalia claims he has "regularly purchased" the following 365 Brands products: "Morning O's," French toaster sticks, shortbread cookies, organic almond milk, macaroni & cheese. (Doc. 1 ¶ 26). Lewis claims she purchased "the 365-brand 'ORGANIC SOYMILK'" in October 2012 from Whole Foods stores in Studio City, California and Sherman Oaks, California. In addition, over the past four to six years Lewis claims she has "regularly purchased" the following 365 Brands products: organic soy-based infant formula, organic "Quack'n Bites Cheese Crackers," organic almond milk, and macaroni & cheese. (*Id.* ¶ 30).

matter is limited to "documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).

## III.   Discussion

### A.   *Rule 8(a)*

Whole Foods argues the complaint's length (74 pages) runs afoul of the requirement for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. PRO. 8(a). However, "verbosity or length is not by itself a basis for dismissing a complaint based on Rule 8(a)." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32 (9th Cir. 2008) (citing *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004); *see also Atwood v. Humble Oil & Ref. Co.*, 243 F.2d 885, 888 (5th Cir. 1957).

### B.   *Standing*

#### 1.   *Unpurchased Products*

Plaintiffs' claims extend beyond the nine allegedly purchased items to all 365 Brands products that are allegedly falsely labelled as being organic, natural, and/or GMO-free. (Doc. 1.) Whole Foods argues Plaintiffs lack standing in regard to unpurchased products for which they arguably have not suffered any injury. Standing under Article III requires that plaintiffs suffer an injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The UCL, FAL, and CLRA have an "economic injury" standing requirement that is met if the plaintiff "can truthfully allege [he was] deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 881 (Cal. 2011).

Courts in the Fifth Circuit have not directly considered standing for unpurchased product claims. In the Ninth Circuit, courts have considered the issue and are in disagreement. *See Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868–70 (N.D. Cal. 2012) (recognizing split and analyzing positions).  Some courts hold there is no standing because there is no injury-in-fact. *See Id.* at 869 (citing *Granfield v. NVIDIA Corp.*, No. C 11–05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10–01044 JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011)); *see also Larsen v. Trader Joe's Co.*, C 11-05188 SI, 2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012). Others hold there is standing if plaintiffs can show unpurchased products "substantially similar" to products actually purchased by the plaintiff. *Id.* at 869 (citing *Anderson v. Jamba Juice*, 888 F. Supp. 2d 1000, 1005–06 (N.D. Cal. 2012); *Stephenson v. Neutrogena Corp.*, C 12-0426 PJH, 2012 WL 8527784, at *1 (N.D. Cal. July 27, 2012); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C–11–2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012)). A final group holds that the issue should be addressed not in a motion to dismiss but in a motion for certification. *See Miller*, 912 F. Supp. 2d at 869 (citing *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992–93 (E.D. Cal. 2012); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal.2012)); *Clancy v. The Bromley Tea Co.*, 12-CV-03003-JST, 2013 WL 4081632, at *5 (N.D. Cal. Aug. 9, 2013) (citations and internal quotation marks omitted); *accord Cardenas*, 870 F. Supp. 2d at 992; *see also In re Frito-Lay N. Am., Inc. All Natural Litig.*, 12-MD-2413 RRM RLM, 2013 WL 4647512, at *13 (E.D.N.Y. Aug. 29, 2013). Here, Plaintiffs' claims encompass hundreds of different products. Some claims involve local in-store representations that are not on actual product labels. Plaintiffs likely do not meet the substantially similar test or requirements for class

certification on many of their claims. However, it is not necessary to resolve this issue since Plaintiffs' claims are dismissed for lack of plausible reliance (see below).

### 2. Unseen Representations

Whole Foods argues Plaintiffs failed to plead they actually viewed false representations before purchasing the products and the representations were a reason for making the purchases. *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 947 (S.D. Cal. 2007) ("[F]ailure to allege reliance leaves open the possibility that Plaintiff is attempting to sue on behalf of other injured parties even though she herself was not injured."); *Brazil v. Dole Food Co., Inc.*, 12-CV-01831-LHK, 2013 WL 5312418, at *9 (N.D. Cal. Sept. 23, 2013) (plaintiff did not have standing under the UCL, FAL, or CLRA when he failed to allege that he either viewed or relied on the defendant's alleged misrepresentations). The complaint in this case includes allegations that Plaintiffs "saw the false, misleading, and deceptive representations detailed." (Doc. 1 ¶ 126). The complaint further alleges:

> [Plaintiffs] reasonably believed the 365 Organic products were organic, as labeled and the 'ORGANIC' representation was a significant reason for purchase. [Plaintiffs] also relied upon Whole Foods' representations that all these products do not contain artificial additives and ingredients listed in Whole Foods' Unacceptable Ingredient List, and that all these products do not contain GMOs.

(*Id.* ¶¶ 26, 30). Some of the claims involve online and in-store representations not present on the actual packaging of purchased products. *See, e.g.,* Doc. 1 ¶ 33 (in-store signage at Whole Foods Market, 701 Waugh Dr., Houston, Texas). Plaintiffs do not allege they saw the Unacceptable Ingredient List or "nothing artificial" representations. Doc. 1 ¶¶ 26–35. Since this case is dismissed on plausibility grounds, it is not necessary to resolve this issue.

### C.   Implied Preemption

The doctrine of implied preemption applies where "'Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme' or where 'state law conflicts with federal law or interferes with the achievement of federal objectives.'" *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 384 (5th Cir. 2004). A court begins with a presumption against preemption, based on an "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). The Supreme Court has recognized "States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders." *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 144 (1963) (quoting *Plumley v. Massachusetts*, 155 U.S. 461, 472 (1984)).

Whole Foods argues "organic" claims are impliedly preempted by the Organic Foods Production Act ("OFPA", 7 U.S.C. §§ 6501, *et seq*.). The law does not indicate a clear and manifest purpose to occupy the field, nor does it conflict with relevant California law. *Jones v. ConAgra Foods Inc.*, 912 F. Supp. 2d 889, 893 (N.D. Cal. 2012) (organic misrepresentation claims not impliedly preempted by OFPA because California law related to organic labeling did not conflict with OFPA; rather, they incorporated the OFPA). Whole Foods points to a contrary California state court decision. *Quesada v. Herb Thyme Farms, Inc.*, 166 Cal. Rptr. 3d 346, 358–59 (Cal. Ct. App. 2013). That court relied on an Eighth Circuit holding expressly limited to the issue of noncompliance with organic certification laws, excluding preemption of "state law claims unrelated to the decision to certify, and certification compliance" such as misrepresentation claims. *Id*. at 798 (citing *In re Aurora Dairy Corp. Organic Milk Mktg. &*

*Sales Practices Litig.*, 621 F.3d 781 (8th Cir. 2010)). The case is now on review in the California Supreme Court. *Quesada v. Herb Thyme Farms*, 323 P.3d 1 (Cal. 2014).

Whole Foods argues "natural" food claims are impliedly preempted by the Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Nutritional Labeling and Education Act of 1990 ("NLEA", Pub. L. No. 101–535, 104 Stat 2353 (1990)). The law does not indicate conflict preemption or field preemption. *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 335 (3d Cir. 2009) (neither field nor conflict preemption existed under federal statute or formal regulatory action, despite the FDA's acknowledgement that issuing a formal definition of "natural" would help resolve ambiguity surrounding misleading label claims). *Id.* at 341. Plaintiffs' claims are not impliedly preempted by the OFPA or the FDCA.

### D.     Primary Jurisdiction

Whole Foods argues the Court should refrain from ruling on "organic" and "natural" claims under the doctrine of primary jurisdiction (Doc. 18 at 26). This doctrine is limited to issues which, "under a regulatory scheme, have been placed within the special competence of an administrative body." *Mercury Motor Exp., Inc. v. Brinke*, 475 F.2d 1086, 1092 (5th Cir. 1973) (citing *Gen. Am. Tank Car Corp. v. El Dorado Terminal Co.*, 308 U.S. 422, 433 (1940)). The doctrine of primary jurisdiction does not defeat the court's jurisdiction, rather the case is stayed or dismissed until the agency can first give a ruling so as to provide "the court the benefit of the agency's views." *Id.* at 1092. Whole Foods cites to *Cox v. Gruma Corp.*, 12-CV-6502 YGR, 2013 WL 3828800, at *2 (N.D. Cal. July 11, 2013), as an instance where primary jurisdiction was successfully invoked to defer to the FDA the question of whether the existence of GMO ingredients was allowed under a product labelled "natural." However, in response to the *Cox* court's request for agency guidance, the FDA informed the court in a letter that it would refrain

from defining the term "natural" due to limited resources and the agency's need to address other matters. FDA Letter at 2–3, *Cox v. Gruma Corp.*, No. 12-CV-6502 YGR (N.D. Cal. July 11, 2013). "[M]ost other federal courts that have addressed whether GMOs are 'natural' have declined to stay or dismiss the case based on the primary jurisdiction doctrine." *Rojas v. Gen. Mills, Inc.*, 12-CV-05099-WHO, 2013 WL 5568389, at *6 n. 4 (N.D. Cal. Oct. 9, 2013) (citing *In re Frito-Lay*, 2013 WL 4647512, at *6–7; *In re ConAgra Foods, Inc.*, No. 11–05379–MMM, 2013 W L 4259467, at * 4–5 (C.D. Cal. Aug. 12, 2013); *Krzykwa v. Campbell Soup Co.*, No. 12–cv–62058, 2013 WL 2319330 (S.D. Fla. May 28, 2013)). Here, deference to the FDA would likely be unfruitful due to the agency's long-standing reluctance to officially define the term "natural." *See In re Frito-Lay*, 2013 WL 4647512, at *9.[2]

### E.   Plausible or Reasonable Reliance

Whole Foods argues the Plaintiffs cannot identify a plausible misrepresentation under the "reasonable consumer" standard. The standard requires Plaintiffs to show "members of the public are likely to be deceived." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal citations omitted); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003) (plaintiffs must show "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."). Whether a reasonable consumer would find a representation misleading is generally a fact question. *Id.* Dismissal is only appropriate in "rare" situations, as when "the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id.*; *Hairston v. S. Beach Beverage Co., Inc.*, CV 12-1429-JFW DTBX, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) ("[W]here a Court can conclude as a matter of law that

---

[2] *See also* Nicole E. Negowetti, *Defining Natural Foods: The Search for A Natural Law*, 26 REGENT U. L. REV. 329, 364 (2014) ("[T]here is no indication that the FDA, courts, Congress, state legislatures, or the marketplace will create a comprehensive, uniform, and enforceable definition of natural anytime in the near future.").

members of the public are not likely to be deceived by the product packaging, dismissal is appropriate.").

In a parallel case, a district court denied Whole Foods's motion to dismiss on grounds that "All Natural" products plausibly appear to the reasonable consumer not to contain Sodium Acid Pyrophosphate ("SAPP"). *Garrison v. Whole Foods Mkt. Group, Inc.*, 13-CV-05222-VC, 2014 WL 2451290 (N.D. Cal. June 2, 2014). Unlike the instant case, *Garrison* involved only one ingredient, SAPP, and one representation ("All Natural") printed on labels. The court took judicial notice by unopposed motion of an FDA Warning Letter to Alexia Foods, Inc. stating: "Your Alexia brand Roasted Red Potatoes & Baby Portabella Mushrooms product contains disodium dihydrogen pyrophosphate, which is a synthetic chemical preservative. Because your products contain this synthetic ingredient, the use of the claim "All Natural" on this product label is false and misleading . . . ." *Id.* at *1 n. 2. The court held Whole Foods violated the FDCA, although its state claims were not preempted. Nonetheless, in response to Whole Foods's argument that SAPP was allowed under another federal regulation, the USDA organic labeling regulations, the court noted: "there is no evidence in the record that reasonable consumers are even aware of the USDA regulations regarding the definition of the term 'organic,' let alone that these consumers assume that definition applies to 'natural' foods as well." *Garrison*, at *3 (citing *In re Frito–Lay N. Am., Inc. All Natural Litig.*, No. 12–md–2413 (RRM)(RLM), 2013 WL 4647512, at *15 (E.D.N.Y. Aug. 29, 2013) ("Nor can the Court conclude that a reasonable consumer, or any consumer, is aware of and understands the various federal agencies' views on the term 'natural.'"); *Mason v. Coca–Cola Co.*, 774 F.Supp.2d 699, 705 (D.N.J.2011) ("It is simply not plausible that consumers would be aware of FDA regulations regarding 'nutrient content' and restrictions on the enhancement of snack foods.").). The court concluded: "it is

plausible that a reasonable consumer—regardless of the precise definition of natural to which that consumer adheres—could interpret the words 'all natural' to exclude synthetic compounds such as SAPP." *Id.* at 2. The court added that there was no reason to believe that a reasonable consumer would even know that SAPP is synthetic. *Id.* at 3. The court did not define "synthetic."

The principal "natural" food case is *Williams v. Gerber*, 552 F.3d 935 (9th Cir. 2008). There, the Ninth Circuit reversed the dismissal of a claim that Gerber Fruit Juice Snacks deceptively contained only white grape juice and no juice from fruits displayed on the packaging. 552 F.3d at 939-40. Even though the actual ingredients were listed on the Nutrition Facts Label, the court held the packaging had four features likely to deceive a reasonable consumer: (1) the name ("Fruit Juice Snacks"); (2) the pictures of fruits; (3) the statement, "made with real fruit juice and other all natural ingredients"; and (4) the statement, "just one of a variety of nutritious Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy." *Id.* The court explained:

> We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. . . . We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Id.* at 940. The court noted "other *all natural* ingredients" could reasonably be interpreted to mean "*all* the ingredients in the product were natural." *Id.* at 939 (emphasis added).

Lower courts following *Williams* have generally denied motions to dismiss claims that "all natural" products contained "unnatural" ingredients, according to the definition of "natural" in the pleadings. *Surzyn v. Diamond Foods, Inc.*, C 14-0136 SBA, 2014 WL 2212216 (N.D. Cal. May 28, 2014) (holding that "All Natural" Kettle Brand tortilla chips reasonably appear not to

contain maltodextrin and dextrose). Courts have held the definition of "natural" remains a fact question, to be determined based on "contextualized evidence regarding consumer perceptions." *Id.; see also Von Koenig v. Snapple Beverage Corp.*, 713 F.Supp.2d 1066, 1080 (E.D. Cal. 2010) ("All Natural" juice reasonably appears not to contain high fructose corn syrup); *Astiana v. Ben & Jerry's Homemade, Inc.,* C 10-4387 PJH, 2011 WL 2111796, at *5–6 (N.D. Cal. May 26, 2011) ("all natural" ice cream reasonably appears not to contain alkalized cocoa); *Wilson v. Frito–Lay N. Am., Inc.,* 12-1586 SC, 2013 WL 1320468, at *12–13 (N.D. Cal. April 1, 2013) (chips "Made with ALL NATURAL Ingredients" reasonably appear not to contain maltodextrin, ascorbic acid, citric acid, and caramel color); *Vicuna v. Alexia Foods, Inc.*, No. 11–6119(PJH), 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) ("All Natural" chips reasonably appear not to contain SAPP); *Parker v. J.M. Smucker Co.*, C 13-0690 SC, 2013 WL 4516156 (N.D. Cal. Aug. 23, 2013) ("All Natural" Crisco cooking oil reasonably appears not to contain GMOs or to be "chemically processed"); *Ault v. J.M. Smucker Co.*, 13 CIV. 3409 PAC, 2014 WL 1998235 (S.D.N.Y.  May 15, 2014) (same); *Dorsey v. Rockhard Labs., LLC,* CV 13-07557 DDP RZX, 2014 WL 4678969 (C.D. Cal. Sept. 19, 2014) ("All Natural" sexual performance pills); *Rojas v. Gen'l Mills, Inc.,* No. C 12–5099 WHO, 2014 WL 1248017, at *7–8 (N.D. Cal. Mar. 26, 2014) ("100% Natural" and "All Natural" Nature Valley granola bars could mislead a reasonable consumer where the products contained GMOs); *Garcia v. Kashi Co.*, 12-21678-CIV, 2014 WL 4392163 (S.D. Fla. Sept. 5, 2014) ("All Natural" Kashi products reasonably appear not to contain GMOs, Pyridoxine Hydrochloride, Alpha–Tocopherol Acetate, Hexane–Processed Soy ingredients and Calcium Pantothenate"). Courts have generally treated "100% natural" the same as "all natural." *Bohac v. Gen. Mills, Inc.*, 12-CV-05280-WHO, 2014 WL 1266848 (N.D. Cal. Mar. 26, 2014) ("100% Natural" granola bars reasonably appear not to contain soy lecithin, corn

syrup, or natural flavor); *Lynch v. Tropicana Products, Inc.*, 2:11-CV-07382 DMC, 2013 WL 2645050 (D.N.J. June 12, 2013) ("100% pure and natural orange juice" reasonably appears not to be colored, flavored, pasteurized, deaerated, stripped of flavor and aroma, and stored for long periods of time). *Hitt v. Ariz. Beverage Co., LLC,* 2009 WL 449190, at *7 (S.D. Cal. Feb. 4, 2009) ("All Natural," "Natural," or "100% Natural" tea reasonably appears not to contain high fructose corn syrup); *Jou v. Kimberly-Clark Corp.*, C-13-03075 JSC, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ("Whether one labels a product "natural" or "all natural," the same plausible inference can be drawn—that the product is natural, meaning it is not made with any non-natural ingredients."). Note that the actual holding in *Jou* was that diapers labeled "pure & natural" reasonably appear not to contain polypropylene, "in the context of product packaging that includes green coloring and images of leaves." *Id.*; *see also Hairston*, 2012 WL 1893818, at *3 (claim involving Lifewater product label "All natural with vitamins" does not include "all natural" "in a vacuum" and was preempted by vitamin regulations); *c.f. Wilson*, 2013 WL 1320468, at *11  (rejecting the "vacuum" argument in *Hairston* and finding "Made with ALL NATURAL ingredients" reasonably indicates product is exclusively natural or, alternatively, that the product "simply includes some all-natural ingredients"; reasonable consumers would not necessarily "ascribe significance to the 'made with ...' qualifier").

Pushing against the boundaries of the holding in *Williams*, some courts have considered the fact that consumers of "natural" foods can simply turn the package over and read the true ingredients on the Nutrition Facts Label. *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978-80 (C.D. Cal. 2013) ("All Natural" appearing "immediately above" ingredients list was not deceptive); *Gitson v. Trader Joe's Co.*, 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) (reasonable consumer relying on the ingredients list is not deceived by nondairy soy milk); *Kane v. Chobani,*

*Inc.*, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ("Because the labels clearly disclosed the presence of the [allegedly unnatural ingredients] it is not plausible that Plaintiffs believed, based on Defendant's '[o]nly natural ingredients' or 'all natural' representations, that the [product] did not contain [the challenged ingredients]"); *Hairston*, 2012 WL 1893818, at *5 ("All natural with vitamins" Lifewater does not reasonably suggest that vitamins themselves are natural, and "to the extent there is any ambiguity, it is clarified by the detailed information contained in the ingredient list, which explains the exact contents of Lifewater."); *Viggiano v. Hansen Natural Corp.*, 2013 WL 2005430 (C.D.Cal. May 13, 2013) ("In cases where a product's front label is accurate and consistent with the statement of ingredients, courts routinely hold that no reasonable consumer could be misled by the label because a review of the statement of ingredients makes the composition of the [product] clear").

Courts have further limited "natural" claims based on pleading standards. Courts have dismissed with leave to amend pleadings that did not specify *which* ingredients were unnatural. *Figy v. Frito-Lay N. Am., Inc.*, 13-3988 SC, 2014 WL 3953755 (N.D. Cal. Aug. 12, 2014) (dismissing "all natural" claims providing "no detail whatsoever about how or why the offending ingredients are unnatural."); *Chin v. Gen. Mills, Inc.*, CIV. 12-2150 MJD/TNL, 2013 WL 2420455 (D. Minn. June 3, 2013) (same). Courts have also dismissed claims going beyond the packaging to unspecified statements and advertisements. *Garrison*, 2014 WL 2451290, at *4 (dismissing claims based on misrepresentations of natural ingredients "contained in various media advertising and . . .  reiterated and disseminated by officers, agents, representatives, servants, or employees" of Whole Foods."); *Janney v. Mills*, 944 F. Supp. 2d 806, 809 (N.D. Cal. 2013) (dismissing claims that Nature Valley granola bars deceptively contain high fructose corn syrup, high maltose corn syrup, and maltodextrin, despite the use of  "images of forests,

mountains, and seascapes; photographs of people in natural settings such as deserts, forests, lakes, beaches or mountains; photographs of wildlife, plants, lakes, clouds; or videos of mountain bikers riding on forest or desert trails and pausing to admire scenic vistas while snaking on granola bars. . . The allegation that an 'image of nature' can be viewed as deceptively describing the ingredients in granola bars is entirely implausible, and therefore inadequate to state a claim under any of the causes of action pled in the FAC—much less, to state a claim for fraud.")

One court went so far as to hold "All Natural" was not deceptive by definition, given the plaintiff's conflicting definitions of the term. *Pelayo*, 989 F. Supp. 2d at 978-80. The court added, "the reasonable consumer is aware that Buitoni Pastas are not 'springing fully-formed from Ravioli trees and Tortellini bushes.'" *Id.* Several courts have criticized this holding. *See Jou,* 2013 WL 6491158, at *8 (*Pelayo* "is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit."). Another court dismissed without leave to amend a complaint involving a product line of over 30 "natural" shampoos and cosmetics, because "shampoos and lotions do not exist in nature, there are no shampoo trees, cosmetics are manufactured. Thus Plaintiffs cannot plausibly allege they were deceived to believe shampoo was 'existing in or produced by nature.'" *Balser v. Hain Celestial Group, Inc.*, CV 13-05604-R, 2013 WL 6673617 (C.D. Cal. Dec. 18, 2013). Another court dismissed without leave to amend a claim that "All Natural" yogurt was deceptively "artificially colored using fruit or vegetable juice concentrate." *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1137 (N.D. Cal. 2014). The court rejected outright the assertion that fruit or vegetable juices were "highly processed unnatural substances far removed

from the fruits or vegetables they were supposedly derived from and in fact were more akin to synthetic dyes like coal tar dyes." *Id.*

Other healthy-sounding terms on food labels have been held to be non-actionable puffery. *Fraker v. KFC Corp.,* 2006 U.S. Dist. LEXIS 79049, at *9–11 (S.D. Cal. Oct. 19, 2006) ("highest quality ingredients," "balanced diet plan," "part of a sensible diet"); *Shaker v. Nature's Path Foods, Inc.*, EDCV 13-1138-GW OPX, 2013 WL 6729802 (C.D. Cal. Dec. 16, 2013) ("optimum"). Courts have also dismissed claims based on healthy-sounding terms that are "objectively true." *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1103-04 (N.D. Cal. 2012) ("'gluten free' . . . communicates nothing more than the absence of gluten in the product); *Figy*, 2014 WL 3953755 ("FAT FREE"); *cf. Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1128-29 (C.D. Cal. 2010) ("It is not clear whether or not a statement that a product contains no cholesterol would cause a reasonable consumer to conclude that the product does not increase LDL blood cholesterol levels."); *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 895–99 (N.D. Cal. 2012) (reasonable consumer may be deceived by products with 70% organic content labeled with "grammatical  variations" of "product name + "organics", or product name + close tag line with word "organic.").

The Ninth Circuit has suggested limits on the scope of *Williams* by affirming dismissals in two unpublished cases involving chewing gum and ice cream. *Stuart v. Cadbury Adams USA, LLC*, 458 Fed. App'x 689, 690–81 (9th Cir. 2011) ("Only an unreasonable consumer would be confused or deceived by Cadbury's failure to clarify that Trident White gum works only if consumers continue to brush and floss regularly."); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 Fed. App'x 113, 115 (9th Cir. 2012) ("[I]t strains credulity to claim that a reasonable consumer would be misled to think that an ice cream dessert, with 'chocolate coating topped

with nuts,' is healthier than its competitors simply by virtue of these "Original" and "Classic" descriptors."). Some lower courts have dismissed claims along similar common-sense lines, rejecting claims requiring the reasonable consumer to leap to conclusions about the healthfulness or the fruit and vegetable content of common grocery items. *McKinnis v. Kellogg USA,* 2007 WL 4766060, at \*4 (C.D. Cal. Sept.19, 2007) ("Natural Fruit Flavors" in Froot Loops); *Werbel ex rel. v. Pepsico, Inc*., C 09-04456 SBA, 2010 WL 2673860, at \*5 (N.D. Cal. July 2, 2010) (Cap'n Crunch "Crunchberries"); *Red v. Kraft Foods, Inc.*, CV 10-1028-GW AGRX, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ("The fact remains that the [Kraft Vegetable Thins] is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables."); *Henderson v. Gruma Corp.*, No. 10–4173, 2011 U.S. Dist. LEXIS 41077, at \*33–34 (C.D. Cal. Apr. 11, 2011) (Mission Guacamole "With Garden Vegetables," i.e. dehydrated vegetables, "does in fact contain vegetables that can be grown in a garden."); *Rooney v. Cumberland Packing Corp.*, 12-CV-0033-H DHB, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) (reasonable consumers were not deceived by "Sugar in the Raw," which did not indicate it was "unprocessed and unrefined" but was processed according to "industry standards."). Other courts have distinguished *Williams* where packaging does not contain "affirmative misrepresentations" such as fruits that do not exist in the product. *Manchouck v. Mondelez Int'l Inc.*, C 13-02148 WHA, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ("It is ridiculous to say that consumers would expect snack food 'made with real fruit' to contain only 'actual strawberries or raspberries,' rather than these fruits in a form amenable to being squeezed inside a Newton."); *Delacruz v. Cytosport, Inc.*, C 11-3532 CW, 2012 WL 1215243 (N.D. Cal. Apr. 11, 2012) (Muscle Milk labeled "0g Trans Fat" is not misleading simply because the product contained certain *other* fats); *Sensible Foods, LLC v. World Gourmet, Inc.*, 11-2819 SC,

2012 WL 566304 (N.D. Cal. Feb. 21, 2012) ("[I]t strains the boundaries of the English language . . . to say that products made primarily of potatoes are not made of potatoes . . . or that the words 'veggies' and 'apples,' when used to describe products containing veggies and apples, are 'literal falsities.'"). *See also Williamson v. Apple,* No. 5:11–cv–00377 EJD, 2012 U.S. Dist. LEXIS 125368, at *17–19 (N.D. Cal. Sept. 4, 2012) (Apple marketing "would not lead the 'reasonable consumer' to believe that the glass housing on the iPhone 4 was indestructible or drop-proof because . . . it is a well-known fact of life that glass can break under impact, even glass that has been reinforced. This much is known to the ordinary, reasonable consumer.").

In the instant case, plaintiffs allege that 365 Brands deceptively include (1) non-organic ingredients in organic products, (2) GMOs and (3) Unacceptable Ingredients. Plaintiffs have submitted hundreds of product label images. Docs. 5-2 to 5-5. In regard to non-organic ingredients, none of the labels state "100% organic." The organic labels include USDA and third-party certification seals. Plaintiffs do allege the products include "synthetic ingredients that are ***not*** permitted in organic foods" and that "have not been approved to be used in ***any*** food ***at all***, much less in organic food." Doc. 36 at 35 (emphasis in original).   Plaintiffs do not, however, allege that the certifications are invalid or that the labels violate USDA regulations. The OFPA allows non-organic ingredients in "organic" labelled food, depending on the type of label. 7 C.F.R. § 205.301. Plaintiffs offer no reason that the reasonable consumer would assume 365 Brands organic products are any more organic than what organic certifying agencies require.

In regard to GMOs, many submitted labels include the statement: "365 Everyday Value products are formulated to avoid genetically engineered ingredients." Yet Plaintiff has submitted lab test results showing 365 Everyday Value Corn Flakes contained 57% GMO corn. Doc. 1 at 29. The Whole Foods website states:

What can I do to avoid GMOs in the grocery store?
- **Choose organic products** . . .
- Look for the **Non-GMO Project Verified** seal on products.
- Look at the **non-GMO shopping lists** found on each of our store's webpages.
- Buy our **365 Everyday Value** products. All ingredients derived from plants are sourced to avoid GMOs, and hundreds of those products are **verified by the Non-GMO Project**.

"FAQ on GMOs," Doc. 5-9 at 2 (emphasis in original). The same document states: "shoppers looking for products that are sourced to avoidGMOs [sic] can seek out **organic** or **non-GMO Project Verified** products." *Id.* (emphasis in original). Another page on the website distinguishes "enrolled" and "verified" non-GMO products. Doc. 5-8 at 1. While the website is not a model of clarity, the lab results and other evidence do not show 365 products were not "sourced to avoid" GMOs, nor that verified non-GMO products contained GMOs. Plaintiffs allege without providing evidence that "Whole Foods also trains its store employees to tell consumers that all 365 Everyday Value products and Whole Foods branded products are free from [GMOs]." Doc. 1 ¶ 59. None of the submitted labels and literature states, however, that 365 Brands products are "GMO free."

The Unacceptable Ingredient List is located on the Whole Foods website. Doc. 5-7. The list begins with a bold disclaimer:

> **We reserve the right to change this list at any time. Please note that creating a product with no unacceptable ingredients does not guarantee that Whole Foods Market will sell it. This list is intended for illustrative purposes only. If you are interested in selling your product to Whole Foods Market, please contact a WFM buyer.**

*Id.* Plaintiffs allege they purchased 365 Brands products containing Unacceptable Ingredients, including "irradiated foods" (cholecalciferol, ergocalciferol), "nitrates" (thiamine mononitrate), "artificial colors," and "artificial flavors." Doc. 36 at 48. Whole Foods argues the term "irradiated foods" is "directed to the use of ionizing radiation in meat, produce, seafood and

freestanding spice products, not obscure nutrient, vitamin, and mineral ingredients." Doc. 18 at

44. Plaintiffs argue that all food coloring is "artificial," even those made of "natural" ingredients,

according to the FDA definition of "color additive." Doc. 1 ¶ 89 (citing 21 C.F.R. §

101.22(a)(4)). Plaintiffs list more than fifty ingredients contained in 365 Brands products that are

"artificial." Doc. 1 at 38–45. Plaintiffs allege the ingredients do not meet the reasonable

consumer's understanding of the term "natural," which "comports with federal law and Whole

Foods' proffered definition." Doc. 1 ¶ 86. Specifically, Plaintiffs cite the following definitions:

(1) "Natural foods can be defined as foods that are minimally processed, largely or

completely free of artificial ingredients, preservatives and other non-naturally occurring

chemicals and as near to their whole, natural state as possible." WHOLE FOODS 2011 ANNUAL

REPORT 4.

> (2) The term 'natural' may be used on labeling for meat products and poultry
> products, provided the applicant for such labeling demonstrates that: (1) the
> product does not contain any artificial flavor or flavoring, coloring ingredient, or
> chemical preservative (as defined in 21 CFR 101.22), or any other artificial or
> synthetic ingredient; and (2) the product and its ingredients are not more than
> minimally processed.

USDA FOOD STANDARDS AND LABELING POLICY BOOK (2005). For "synthetic," Plaintiffs cross-

reference 7 C.F.R. § 205.2:

> Synthetic. A substance that is formulated or manufactured by a chemical process
> or by a process that chemically changes a substance extracted from naturally
> occurring plant, animal, or mineral sources, except that such term shall not apply
> to substances created by naturally occurring biological processes.

(3) "According to FDA policy, 'natural' means the product does not contain synthetic or

artificial ingredients." *Food Label Helps Consumers Make Healthier Choices*, FDA (March

2008), http://www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM199361.pdf.   In

fact, the FDA has declined to adopt a formal definition of "natural":

> Because of resource limitations and other agency priorities, FDA is not undertaking rulemaking to establish a definition for "natural" at this time. The agency will maintain its current policy (as discussed in the general principles proposal (56 FR 60421 at 60466)) not to restrict the use of the term "natural" except for added color, synthetic substances, and flavors as provided in § 101.22. Additionally, the agency will maintain its policy (Ref. 32) regarding the use of "natural," as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food *that would not normally be expected to be in the food*. Further, at this time the agency will continue to distinguish between natural and artificial flavors as outlined in § 101.22.

Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food, 58 Fed. Reg. 2302-0158 (Jan. 6, 1993) (emphasis added). The FDA definition incorporates "normal expectations," adding little if anything to the Court's analysis under the reasonable consumer standard. The cited Whole Foods definition is circular, defining "natural" as "not artificial" and "as near to [a] natural state as possible," in addition to "minimally" processed. The USDA definition is more stringent, excluding any "chemical process . . . that chemically changes a substance," but it is limited to meat and poultry. Nonetheless, Whole Foods does not offer an alternative definition which might include all the "artificial" ingredients contained within 365 Brands products. Whole Foods simply argues that the proffered understanding "based on arcane and technical regulatory definitions, not what a reasonable consumer would consider the terms to mean." Doc. 18 at 44–45. Most of the California natural-foods decisions cited above have held that whether a reasonable consumer would plausibly consider alleged artificial ingredients "natural" is a fact question. However, those decisions involve products labeled "all natural." Here, Plaintiffs do not allege misrepresentations on the labels but on the Unacceptable Ingredient List, located on a webpage that Plaintiffs have not shown they nor the reasonable consumer would have visited and plausibly relied upon.

In addition to the inclusion of artificial colors and flavors on the Unacceptable Ingredient List, Plaintiffs submit images of advertising and signage that state, e.g., "Nothing artificial . . . ever, ever, ever." Doc. 5-20 at 3. None of the submitted labels include a statement referring to the list. The motion and response discuss "difficult to read embedded text on a banner of a product label." Doc. 18 at 45; Doc. 36 at 40. The Court is unable to locate text on a banner referring to "natural" or "artificial" ingredients on the submitted labels. Some of the labels include brown strips featuring faint green line drawings, including some text including the word "PURE." Six, 5-3 at 4. It is possible the words "natural" or "artificial" are printed on these brown strips, but they are not legible in the submitted images even by zooming in. Based on the images submitted, a reasonable consumer would not consider such drawings to be more than decorative graphics and would not rely on them in purchasing the products.

Although *Williams* expressly discouraged reliance on ingredient lists to correct "misleading representations on the front of the box," an ingredient list "certainly serves some purpose," providing "more detailed information about the product that confirms other representations *on the packaging*." 552 F.3d at 940 (emphasis added). Plaintiffs Complaint extends well beyond the packaging to include a diffuse medley of representations on vehicles, signage, and unsubstantiated statements by store employees. Doc. 1 ¶ 29. Plaintiffs even include representations that no longer exist, i.e. past versions of the Unacceptable Ingredient List. Doc. 36 at 48 ("Whole Foods can change the list in the future, it cannot change the past."). Plaintiffs complain these representations belie the "dizzying array of ingredients" listed on the submitted product labels. *Id.* ¶ 12. But that is the purpose of requiring ingredient lists on every product label. Plaintiffs argument seems to be that since Whole Foods has developed a successful brand as a provider of natural foods, it should be obligated to guarantee every molecule in every

product it sells under its in-house brand is natural. Similarly, Plaintiffs argue every molecule in Whole Foods's organic products should be organic, in spite of the tiered organic labeling regime provided by the OFPA. Although one could argue organic labeling is inherently misleading,[3] Plaintiffs do not show how Whole Foods's use of the term is any different from other organic food providers. The same goes for natural foods. Many of the "all natural" decisions listed above have allowed Plaintiffs to proceed to the summary judgment stage with "contextualized evidence regarding consumer perceptions" of natural claims *on product packaging*. *Surzyn*, 2014 WL 2212216, at *3. Here, Plaintiffs allege they, or their purported class, have relied on signage and other expressions of Whole Foods's natural-foods brand outside of product packaging. Plaintiffs have failed to provide a compelling reason for the Court to add another definition to the "confusing, piecemeal, state-by-state construction of what may qualify as a 'natural' product."[4] The only common representation on the actual labels of 365 Products is a logo stating "365 EVERYDAY VALUE." Doc. 5-3. This logo does not plausibly suggest natural ingredients to a reasonable consumer; on the contrary, it suggests the products may not meet the same standards of premium products. Nothing else on the submitted labels plausibly suggests to a reasonable consumer that the products do not contain the alleged "artificial" ingredients.

### F.    Rule 9(b)

Whole Foods argues Plaintiffs failed to state fraud-based claims with particularity. Fed. R. Civ. P. 9(b). In order to articulate the elements of fraud with sufficient particularity, a plaintiff must state the "who, what, when, . . . where" and why of the alleged fraud. *ABC Arbitrage*

---

[3] Chenglin Liu, *Is "USDA Organic" A Seal of Deceit?: The Pitfalls of USDA Certified Organics Produced in the United States, China and Beyond*, 47 STAN. J. INT'L L. 333, 378 (2011).

[4] Rachel Armstrong, et al., *United States Food Law Update: Shrouded by Election-Year Politics, State Initiatives and Private Lawsuits Fill in the Gaps Created by Congressional and Agency Ossification*, 9 J. FOOD L. & POL'Y 99, 109-10 (2013).

*Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 349 (5th Cir. 2002) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)). In regard to "who," the complaint explains the general role of each named defendant, (Doc. 1 ¶¶ 36–41) but the complaint does not explain in detail how each entity contributed to the alleged fraudulent activity. *See In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 857 (N.D. Tex. 2005) ("Any allegations in the Complaint made against 'Defendants' (plural or group) do not meet the requirements of pleading allegations of fraud"). The complaint does not specifically identify "what" alleged misrepresentations influenced the Plaintiffs to purchase each individual product. *See Kane*, 2013 WL 5289253, at *10 (requiring the Plaintiffs to provide a table outlining "which products…contained each representation and for which products these representations were false"). Furthermore, the complaint fails to specifically plead "when" and "where" the allegedly mislabeled products were purchased. Both Gedalia and Lewis only provide the date and location for one purchased product. (*Id*. ¶¶ 26, 30). For the other purchased products, the complaint states a general time frame without locations. (*Id*.). *See Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 797 (N.D. Tex. 2009) (holding that complaint did not satisfy Rule 9(b) for "failing to specify even the state, much less a more precise location, in which the[ ] representations were made"); *Kougl v. Xspedius Mgmt. Co. of Dallas/Fort Worth, L.L.C.*, CIV.A.3:04CV2518-D, 2005 WL 1421446, at *5 (N.D. Tex. June 1, 2005) (holding that complaint failed under Rule 9(b) because "[t]he only reference to time is the vague assertion that the events occurred sometime 'before [defendant] would employ [plaintiff]'").

### G.     *Warranty Claims*

#### 1.     *Express Warranty*

Plaintiffs argue Whole Foods made "written express warranties including, but not limited

to, warranties that its [365 Brands products] were 'organic,' contained no artificial ingredients,

contained no GMOs, and contained no ingredients listed in its Unacceptable Ingredient List."

(Doc. 1 ¶ 202). Whole Foods responds that food labels do not constitute express warranties,

citing cases arising under the Magnuson-Moss Warranty Act ("MMWA"). *See, e.g., Chin v. Gen.*

*Mills, Inc.*, CIV. 12-2150 MJD/TNL, 2013 WL 2420455, at *5 (D. Minn. June 3, 2013)

("Labeling a product '100% Natural' is not a written warranty under the MMWA."); *Astiana*,

2012 WL 2990766, at *3 (noting that many courts have held that product descriptions do not

constitute warranties against a product defect under the MMWA).

Here, Plaintiffs brought their express warranty claims under state law. (Doc. 1 ¶ 201).

California and Texas have both adopted Section 2-313 of the Uniform Commercial Code

("UCC") as their express warranty statute, *see* Cal. Com. Code § 2313 (West 2014);  Tex. Bus.

& Com. Code § 2.313 (West 2013), and their respective state courts undergo similar analyses in

determining whether a breach of express warranty occurred. *Weinstat v. Dentsply Int'l, Inc.*, 103

Cal. Rptr. 3d 614, 626 (Cal. Ct. App. 2010); *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d

353, 361 (Tex. App.—Corpus Christi 1994, no pet.). Federal district courts have also permitted

breach of express warranty claims in food-labelling cases under Cal. Com. Code § 2313. *See In*

*re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011) (holding that representations on

Nutella's packaging constituted an express warranty); *Vicuna*, 2012 WL 1497507, at *2

(holding that the designation "All Natural" on frozen potato products constituted an express

warranty); *see also In re Frito-Lay*, 2013 WL 4647512, at *27 (holding that the "All Natural"

labels on food products created express warranties under New York, California, and Florida law).

The elements of a breach of express warranty claim are: (1) proof that an affirmation or description was made; (2) the statement was part of the basis of the bargain; (3) the buyer relied on the statement; (4) the product failed to comply with the affirmation or description; (5) the breach was the proximate cause of the buyer's financial injury. *See Crosbyton Seed Co.*, 875 S.W.2d at 361. Here, Plaintiff has failed to show an affirmation was made that 365 Brands products did not contain GMOs or non-organic ingredients allowed under organic labeling law. As far as "artificial" ingredients, Plaintiffs have failed to show affirmations not included on product packaging applied to "the Products themselves." *Brown*, 913 F. Supp. 2d at 900; *see also Sugawara*, 2009 WL 1439115, at *5; *McKinnis*, 2007 WL 4766060, at *5. Plaintiff has failed to show plausible reliance, according to the reasonable consumer standard discussed in the previous section ("Plausible or Reasonable Reliance"). *See Bohac*, 2014 WL 1266848, at *9 (the standard for reliance on an express warranty of "100% Natural" granola bars is whether "a reasonable consumer could plausibly read these terms to be specific factual representations that the products contain no non-natural ingredients."); *Sugawara*, 2009 WL 1439115, at *5.

### 2.   *Implied Warranty*

Plaintiffs argue Whole Foods "impliedly warranted that the products were merchantable and fit for the ordinary purposes for which such goods are used." (Doc. 1 ¶ 209). California and Texas's implied warranty of merchantability statutes are based on UCC § 2-314. *See* CAL. COM. CODE § 2314 (West 2014); TEX. BUS. & COM. CODE § 2.314 (West 2013). Section 2-314 states that for goods to be merchantable they must at least: (a) pass without objection in the trade under the contract description; (b) in the case of fungible goods, be of fair average quality within the

description; (c) be fit for the ordinary purposes for which such goods are used; (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; (e) be adequately contained, packaged, and labeled as the agreement may require; or (f) conform to the promises or affirmations of fact made on the container or label (if any). U.C.C. § 2-314(2) (2012). A breach of implied warranty of merchantability claim may be brought under any of § 2-314(2)'s subsections and the claim only fails if it cannot satisfy any of the subsections. *See Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 n.4 (Tex. 1989). Here, Plaintiffs do not show that 365 Brands products plausibly did not meet the first five elements. *See Viggiano*, 944 F. Supp. 2d at 898 (dismissing implied warranty claims for "all natural" soda where plaintiff did not allege "the beverage was not drinkable, that it was contaminated or contained foreign objects, etc."); *Bohac*, 2014 WL 1266848, at *10 (dismissing implied warranty claims for "100% natural" granola bars where plaintiff did not allege the products lacked "the most basic degree of fitness for ordinary use . . . [or], for example, alleged that the products were not edible or contaminated."). Plaintiffs also fail to show the products plausibly did not conform to "promises or affirmations of fact made on the container or label," as explained in the previous section ("Express Warranty").

Plaintiffs further argue Whole Foods's representations that its products were of a premium quality are sufficient to show an "implied warranty of fitness for a particular purpose." Cal. Com. Code § 2315 (West 2014); Tex. Bus. & Com. Code § 2.315 (West 2013) ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose."). Plaintiffs do not allege they used 365 Brands products for a purpose different than

the products' ordinary purpose of human consumption. Plaintiffs contend an implied warranty of fitness for a particular purpose exists when the level of quality or purity is inherent to the product, citing to *Automated Med. Labs., Inc. v. Armour Pharm. Co.*, 629 F.2d 1118 (5th Cir. 1980). That case involved blood plasma infected with hepatitis. Here, Plaintiffs have not alleged 365 Brands products were contaminated. *See Ayala v. Bartolome*, 940 S.W.2d 727, 729 (Tex. App. 1997) ("[A] retailer who sells unwholesome food for human consumption is liable to the consumer for the consequences under an implied warranty imposed by law as a matter of public policy[.]") (quoting *Griggs Canning Co. v. Josey*, 164 S.W.2d 835, 840 (Tex. 1942)).

### H.   Unjust Enrichment

Plaintiffs claim unjust enrichment as an independent cause of action under the principles of restitution. However, California and Texas courts both hold that unjust enrichment is an element of restitution and not an independent cause of action. *See Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Cal. Ct. App. 2010) ("[T]here is no cause of action in California for unjust enrichment. Unjust enrichment is synonymous with restitution.") (citations and internal quotation marks omitted); *Lilani v. Noorali*, CIV.A. H-09-2617, 2011 WL 13667, at *11 (S.D. Tex. Jan. 3, 2011) (observing that most Texas appellate courts do not view unjust enrichment as an independent cause of action but treat it as an element of restitution). In addition, courts have dismissed restitution claims based on allegations of fraudulent activity when the complaint also states claims based on the UCL and CLRA. *See Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 260 (Cal. Ct. App. 2011) ("Because we have found that plaintiffs' remedies at law are adequate (counts alleged under the CLRA, the UCL, and common law fraud), a claim for restitution, alleging that [defendant] has been unjustly enriched by its fraud, is unnecessary."); *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 923 (9th Cir. 2014) (holding that plaintiffs

cannot state a claim for unjust enrichment when they have already stated claims under the UCL and CLRA); *Garrison*, 2014 WL 2451290, at *6 (dismissing the equity-based claim of restitution because "the plaintiff's remedies at law are adequate").

**IV.    Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 18) filed by Defendants Whole Foods Market Services, Inc., *et al.* is **GRANTED**.

It is further

**ORDERED** that the Motion for Class Certification (Doc. 17) filed by Plaintiffs Uri Gedalia, *et al* is **DENIED** as moot.

SIGNED at Houston, Texas, this 30th day of September, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE